### STATE ex EVERTS v JACKSON et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1410.   Decided June 18, 1937

George E. Nicholas, Dayton, and Eugene Mayl, Dayton, for plaintiff.

Kerr, Kerr & Kerr, Troy, for defendants.

### OPINION

By THE COURT

This matter is before this court on appeal on questions of law. The plaintiff, State of Ohio ex Harry L. Everts, filed its petition in the court below alleging that Everts is Superintendent of Building and Loan Associations for the State of Ohio and as such is in charge of the liquidation of the Miami Savings & Loan Company; that on the 18th of April 1933, Paul A. Warner, Superintendent of Building & Loan Asso-

560

ciations took over the assets of the loan company by virtue of §687-1 etc. GC and that the note and mortgage set up in his first and second causes of action are a part of the assets of the Miami Savings & Loan Company which came into his possession as such Superintendent.

The first cause of action is based upon a promissory note for $20,000.00 dated March 8, 1921, payable to the Miami Building & Loan Company. This note had certain appropriate provisions in reference to the payment of interest, taxes and provisions as to fire insurance. It is alleged that there is due and owing the plaintiff from the defendants Samuel L. Jackson and Edna Jackson by reason of said note and interest thereon and fines therein provided for, a total sum of $11,769.03 with interest.

The second cause of action sets up the mortgage and its conditions and the breach thereof and alleges that the premises will be insufficient to liquidate plaintiff's claim and that by reason thereof the income should be applied to the payment and that a receiver should be appointed to collect rents and income. Plaintiff asks judgment for the amount claimed, for foreclosure of the mortgage and sale of the property.

To this petition the defendant, Samuel L. Jackson and Edna, his wife, filed an amended and supplemental answer making certain admissions, among them the execution of the note and mortgage. They deny that the defendants are indebted to the plaintiff in the sum of $11,769.03 and require strict proof as to the amount and deny each and every allegation not admitted. They allege that the indebtedness as claimed by the plaintiff contains illegal interest and a certain amount of fines assessed for non-payment of dues which are illegal and usurious. They ask that a hearing be had to determine the real amount due by virtue of the note up to October 12, 1933.

For a second defense claim they deny that they are indebted to the plaintiff for that on the 12th of October 1933, and long prior to the bringing of this action, the defendants tendered to the plaintiff whatever amount they might then owe in the certificates of deposit of the company for which certificate the plaintiff is liable in the liquidation of said company and that the plaintiff, through its liquidating agent, refused to accept the certificates of deposit and demanded that they have part payment in cash and that in order to make up said indebtedness defendants had ar-

ranged for a loan from the Federal Land Bank of Louisville sufficient to pay the taxes then due and pay for the certificates necessary to pay and cancel the mortgage if they had been accepted and that on refusal of the plaintiff to accept same and demanding part payment in money, the defendants made an application for an increase in their loan and secured an increase of $2000.00 which they had expected to turn over to the company, but said liquidating officer then refused to accept any certificates of deposit and demanded full payment refusing to allow these defendants to retain sufficient money to pay the taxes. Defendants say that in each instance they have arranged with the Federal Land Bank to take care of the payment of their indebtedness to plaintiff and they had arranged a date with the officers of the bank and the party from whom they were purchasing the certificates of deposit; that the Federal Land Bank's agents were to pay for the certificates of deposit and pay the taxes and turn over to the plaintiff sufficient certificates to cancel its mortgage. In the last instance they tendered the $2000.00 in cash and certificates sufficient to exhaust the remainder of the fund to be secured. In each instance the plaintiff refused to accept the certificates and in the last instance refused to take any certificates of deposit in cancellation of the indebtedness claiming that it had no power or authority to accept said certificates. Defendants allege that they retained the loan from the Federal Land Bank for some months but were unable to induce the plaintiff to accept its own certificates of deposit in settlement of the indebtedness due from defendants, which the defendants alleged was a violation of §11321 GC as well as a violation of the principles of equitable set-off.

Defendants further allege that the continued refusal of the plaintiff to accept the certificates created conditions which caused defendants to lose their loan and prevented them from clearing their farm; that plaintiff had no right to refuse to accept its certificates of deposit which are a preferred indebtedness of the company in payment of the indebtedness of a party possessed of such certificates and that the tenders made on October 12, 1933 and again in December, 1933, cancelled said indebtedness and since said date plaintiff has no right to exact or receive interest on said indebtedness for any greater amount than said loan company has during said period paid interest or dividends on said pre-

ferred certificates. The defendants pray that if it is determined that they had a legal right to pay off their indebtedness with certificates and that the tenders were valid and an order is made directing plaintiff to accept its own certificates in payment of defendants' note and mortgage that reasonable time be granted these defendants to arrange a loan so as to pay for the certificates so purchased and carry out their tenders. Defendants believe and aver that they can secure the necessary loan to complete the transaction as originally arranged for. Defendants pray that the amount due from the defendants on October 12, 1933 be determined by the court and that the amount so found due be ordered compensated so far as the indebtedness held by the plaintiff is covered by the certificates of deposit tendered by the defendants and that the court determine whether or not these answering defendants are liable for interest after the date of their first tender. They further pray that the court determine whether the certificates tendered by them are a good and valid tender under §11321 GC or under the general principles of equitable set-off.

We have quoted this answer somewhat at length in order to determine whether or not the same does as a matter of fact constitute a defense, as a matter of law. We must say that, in our judgment, there is considerable doubt as to whether this answer would have withstood a general demurrer. However it does not appear that a demurrer was filed or passed upon by the court. The plaintiff on June 13, 1935 filed a reply denying that the certificates of deposit were tendered in payment of the indebtedness and denying all statements concerning a loan from the Federal Land Bank and denying that any sum of cash was tendered in payment of the indebtedness and refused and denies that the indebtedness has been cancelled by reason of the tenders.

On March 30, 1935, the court made a finding in favor of the plaintiff in the sum of $11,769.03 with interest at 7% from the 31st day of December, 1933.

Motion for new trial was duly filed and on the same day with leave of court, the defendants filed a second amended answer so as to have the pleadings conform to the testimony. The amendment relates to the second defense. In it they deny that they are indebted to the plaintiff. They state that the liquidators had notified the defendants that they would accept $1000.00

in cash, the remainder in certificates of deposit, whereupon the defendants notified the company that they would comply after they had had opportunity to communicate with the Federal Land Bank and that an agreement was then made between the defendants and the plaintiff that they would be given a sufficient length of time to procure their loan and that when the loan was procured, $1000 in cash was to be paid to the company together with certificates in sufficient amount to pay any indebtedness there may be, which at that time, was estimated to be $11,500.00. The defendants say they made application for the loan to the Federal Land Bank and secured a loan of $7000.00. They allege this was sufficient to pay taxes and the $1000 and secure the delivery of the sufficient amount of certificates of deposit to cancel the loan; that they notified the liquidators that they had sufficient cash and certificates of deposit to take up the note and mortgage, whereupon the representative of the plaintiff refused to accept the certificates and demanded that they have a larger sum and that they could not induce the plaintiff to carry out the arrangement and accept the $1000 in cash, and without surrendering their rights under the agreement they secured an increase of $2000, the loan to be furnished by the Federal Land Bank; that plaintiff refused to accept the certificates of deposit and demanded all the cash in the sum of $9000 and would not allow them sufficient to pay the taxes; that they made a tender of $1000 and offered to turn over sufficient certificates to cancel the mortgage and that plaintiff company still refused and insisted that $7000 was not sufficient to take care of the indebtedness that had to be paid including taxes and chattel mortgages; that the plaintiff asserted a false claim that certain indebtednesses must first be paid out of whatever cash the defendants secured from the Federal Land Bank. The defendants say that they had purchased and had under their control at the time of their tender the $1000 in cash and the remainder in certificates and were ready, willing and able to pay the $1000 and deliver the certificates, but the plaintiff refused to accept any certificates. They further allege that they made a tender of $1000 and certificates sufficient to take up the indebtedness and demanded the cancellation of the mortgage which the plaintiff refused; that at no time were they able to induce the plaintiff to accept the payment of their note and the can-

cellation of the mortgage as agreed to, thereby rendering it impossible for the defendants to pay off their note; that the refusal of the plaintiff to accept its own certificates was in violation of the provisions of §11321 GC as well as a violation of the principles of equitable set-off. They allege that the plaintiff had no right to refuse to accept the certificates. They pray in their second amended answer much as in their first. We might say that, in our judgment, the second amended answer is subject to a general demurrer.

We can not help admiring the tenacity of the defendants in continuing to assert their claim that they had a right to compel the acceptance by the plaintiff of a small payment in cash and a large credit gained by tendering to the plaintiff the face value of its own certificates of deposit which the defendants hoped to secure on the open market at thirty cents on the dollar.

The troubles of the defendants began when they borrowed $20,000.00 at 7% interest on farm land and hoped to be able to work out that mortgage. It does not appear whether they did as a matter of fact cut their mortgage down from the original $20,000 to the now existing obligation of slightly over $11,000 plus several thousand dollars of unpaid taxes.

From recent experience, the burden assumed by the defendants when they gave their note in 1921 for $20,000 at 7% interest seems almost unbearable and is a very graphic illustration of the fact that easy credit is not an unmixed blessing. However, with this we have nothing to do except to say it arouses our sympathy when we find two elderly people struggling to save their life's accumulation against an adverse flood of world depression.

We have carefully read the record and it fails, in our judgment, to support the allegations of the answer.

It might be well first to consider the allegations of both answers in substance, that the plaintiff was obliged to accept its certificates of deposit in settlement of the indebtedness due from the defendants under the provisions of §11321 GC. We fear that counsel for defendants have misapprehended the provisions of this section, at least, as we understand it. It provides, in substance, that when cross demands have existed between persons under such circumstances that if one had brought an action against the other a counter-claim or set-off could have been set up, neither can be deprived of the benefit thereof by assignment by the other. The two demands must be deemed compensated so far as they equal each other. This simply provides that parties 1. may not be deprived of the rights they had either to a counter-claim or set-off by an assignment by the other party.

Sec 11317 GC defines a counter-claim as a cause existing in favor of a defendant against a plaintiff between whom a several judgment might be had and arising out of the contract or transaction set forth in the petition.

Sec 11319 GC defines a set-off as a cause of action existing in favor of defendant against a plaintiff between whom a several judgment might be had and arising on contract or ascertained by decision of the court.

Sec 11321 GC upon which the defendant relies simply provides that the rights of the parties to either a counter-claim or set-off may not be destroyed by assignment. We are somewhat at a loss to understand how the defendants can apply either of these sections to the case at bar. They might have been appropriate had the defendants been holders of a certificate of deposit in the bank before it was placed in control of the State authorities. If the plaintiff sought to collect a note given by the defendants, the defendants would probably have been entitled to set-up the fact that they were the holders of certificates at the time of the passing of the bank into the control of the State authorities. But they were not such holders of any certificates of deposit until after the rights of all parties had been fixed, when the Superintendent of Building and Loan Associations took over the assets of the Miami Savings & Loan Company on the 18th day of April 1933.

Where one is indebted to a bank which goes into the hands of a receiver and is at the same time a depositor in the bank, he may set-off his deposit against his indebtedness to the bank. But one who is indebted to the bank may not, after the receiver is appointed, secure a claim to be set-off against his indebtedness by transfer of some other depositor.

So in the case at bar, the rights became fixed upon the assumption of control by the building and loan authorities and rights can not be changed by one indebted to the association securing certificates of deposit from some member of the asso-

ciation who may wish to dispose of them and using them as a face value set-off against the claim of the liquidator. If this were so, it would clearly result in preferences of one creditor over another. If one indebted to the building and loan association could go into the market and buy certificates of deposit at thirty cents on the dollar and require the association to credit them upon his indebtedness at 100 cents on the dollar, it is clear that he would receive discharge by paying thirty cents on the dollar, while some other debtor might be required to pay his debt in full. The assets in the hands of a receiver belong equally to all the certificate holders and a liquidator may not, without an order of the court permit a debtor to discharge his debt by thirty cent certificates instead of cash.

We are, therefore, of the view that there is nothing in §11321 GC which affords these defendants the right to require the liquidator to accept certificates at face value.

The court below held that the compromise which the defendant now claims to be entitled to, can only be worked out under §687-9 GC, which provides, in substance, that the Superintendent may, upon application to the Court of Common Pleas, compromise for cash or other considerations, bad or doubtful debts owing to the association.

There is no question but that the liquidator has a right, under the statute, to present to the Court of Common Pleas situations which may arise in the administration of his trust, which in his judgment would justify a compromise by the acceptance of something other than cash or part cash and part certificates of deposit. While these certificates of deposit are currently much under par, yet from a bookkeeping standpoint it might be desirable to secure them in payment or part payment of a doubtful claim and by proper entries relieve the association of further obligation on account of said certificates.

Turning now to evidence adduced in this case we are compelled to say, that, in our judgment, defendants have failed to sustain the allegations of their answer. It is true there was a long series of negotiations between the plaintiff and defendants in which the defendants sought to arrive at some compromise whereby they could pay their obligation to the company through the application, at least in part, of thirty cent certificates rather than paying cash in full.

But we have searched the record carefully to find, if possible, any agreement binding upon the plaintiff to accept certificates in part payment of the obligation. There was some talk about accepting $1000 in cash, which appeared to have the incidental demand that the defendants pay in cash their unpaid interest and also pay in cash the taxes. The defendant has asserted that it tendered certificates of deposit whereas, as a matter of fact, it is now conceded that they never did have any such certificates in actual possession and consequently could not have tendered them. Neither did they have cash. The situation that confronted them is well stated in the letter of Mr. Brumbaugh, dated February 3, 1934, in which he speaks of a loan to be granted by the Federal Land Bank and Farm Credit Administration of $7,000.00. He pointed out the fact that after payment of the costs this would make cash available in the sum of $6650 of which $2838.83 was required for taxes which included $449.04 road tax, from which relief was being sought but which the association required to be paid. There was also a chattel mortgage in the sum of $400.00 concerning which there is some uncertainty as to whether it would be required by the Lank Bank to be paid. If it had to be paid there was $3411.17 in cash left for the payment of whatever cash the association required and the purchase of the certificates necessary at thirty cents on the dollar, which would purchase certificates of the face value of $11,370.00 tendered as a full compromise of the note and mortgage including interest. It will be noted that this arrangement would not pay the bank any cash at all except insofar as it was interested in the payment of taxes which were a lien against the property ahead of its mortgage. However, this offer was rejected and at a later date an additional $2000 was promised from the Federal Land Bank, but there was never any agreement upon the part of the liquidators to accept the amount of cash that might have been produced from this $9000 loan. The sum and substance of the matter is that the defendants in their strong love for their home and natural inclination to believe that they were losing the results of a life of labor and savings, sought some means by which they could save their farm. Nevertheless, the fact remains that they had no legal remedy which would permit them to force the company to accept certificates of deposit in lieu of cash

under any statute or rule of equity that has been called to our attention. Neither was there any agreement of compromise to which the liquidators gave their assent, nor was there any application to the court for authority to accept certificates of deposit.

We think the court below was correct in holding that only through statutory proceeding, heretofore pointed out, could authority be gained to compromise the claim. We do not insist that the defendants could never have made a binding tender unless they had the actual possession of the certificates, if as a matter of fact they had the certificates available and means provided by which they could acquire them. We have however, reached our conclusion upon the lack of evidence that the liquidator ever agreed to any compromise and also upon his lack of author- ity to accept a compromise unless he made application to the Court of Common Pleas, which he did not do.

We are in accord with the view of the court below as expressed in his opinion. The court below found the amount due on March 12, 1936 to be $12,835.00.

Judgment affirmed.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.